# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

NIKITA MICHELLE MOORE-MONTGOMERY,  )
  )
  Plaintiff,  )
  )
v.  )
  )   CV617-162
NANCY A. BERRYHILL,  )
Acting Commissioner of  )
Social Security,  )
  )
  Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff Nikita Michelle Moore-Montgomery seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance (DIB) and Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's

decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2

Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II.  ANALYSIS

Moore-Montgomery, who was 30 years old when her DIB and SSI claims were denied, alleges disability beginning January 1, 2010. Tr. 195-207. She completed high school and has past work experience as a certified nurse assistant, fast food manager, and poultry dresser. Tr. 22, 216. After a hearing, the ALJ issued an unfavorable decision. Tr. 15-24. He found that plaintiff's obesity, headache, and left foot "crush injury" constituted severe impairments prior to her date last insured, and her depression, bipolar disorder, diabetes, and asthma constituted severe impairments after her date last insured, but none met or medically equaled a Listing. Tr. 17-19. Based on the evidence of record, the ALJ found that

> prior to the date last insured, [Moore-Montgomery] has the residual functional capacity to perform light work . . . except [her] standing and walking is limited to 2 hours out of 8 hours. [She] may occasionally balance, stoop, kneel, crouch, but never crawl. [She] should avoid temperature extremes and hazards (unprotected heights and dangerous machinery). From March 31, 2014 to the present, [she] was limited as above but [she] should avoid exposure

to dust, fumes, gases, and poor ventilation. [She] can occasionally have non-intensive interaction with coworkers, supervisors, and the public.

Tr. 19.

Plaintiff, he determined, was incapable of performing her past work, but could perform the requirements of representative occupations such as bench assembler, surveillance system monitor, and suture polisher. Tr. 22-23. Moore-Montgomery disagrees, arguing that the ALJ failed to evaluate her credibility, her obesity, and the jobs she could perform. Doc. 10.

### A.  Plaintiff's Credibility

The ALJ discredited plaintiff's subjective testimony as to the debilitating extent of her symptoms based on her "substantial gaps in treatment" and "history of being noncompliant with medication" despite "admit[ting] that her symptoms improved when [she] is taking her medications." Tr. 21. Plaintiff argues that these are not sufficiently specific reasons to discredit her subjective testimony. Doc. 10 at 6.

When a claimant attempts to establish disability through his own testimony of pain and other subjective symptoms, the ALJ applies a three-part "pain standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1225

(11th Cir. 2002). It requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* If the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, the ALJ then evaluates the extent to which the intensity and persistence of the claimant's pain limits his ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ may consider the history and testimony, medical signs and laboratory findings, medical opinion evidence, and any other evidence of record describing how the pain affects his daily activities and ability to work. *Id.* §§ 404.1529(c), 416.929(c).

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting [his] allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." *Id.* (internal citation omitted). While

an ALJ's credibility determination need not "cite 'particular phrases or formulations,'" it "cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" *Id.* at 1210-11 (quoting *Foote*, 67 F.3d at 1561).

Failure to seek treatment for an allegedly disabling impairment, of course, is a sufficient reason to discount a claimant's credibility. *See* 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(v), 416.927(c)(4), 416.929(c)(3)(v); *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 892 (11th Cir. 2013). And, as described by the Commissioner, plaintiff had "substantial" half-year gaps between onset and seeking mental health treatment for an allegedly disabling mental impairment. Doc. 11 at 5-6; *see* tr. 21 (noting a three-month gap from psychiatric hospitalization to a family medicine appointment, and another nine-month gap to her next family medicine appointment, where plaintiff's affect was described as "unremarkable" (citing tr. 533, 567, 638-39)). She offers no explanation for those gaps, leading the ALJ to infer that she was stable. Indeed, while compliant with her antipsychotic medication (Geodon, prescribed for schizophrenia symptoms), plaintiff only sporadically sought

treatment. *Id.*; *see also* tr. 548 (when compliant with her CPAP machine, she reports similar significant improvement in her fatigue symptoms). And an impairment that is resolved or stabilized by medication is not disabling. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling"), *cited in Williams v. Berryhill*, 2017 WL 2981348 at * 3 (S.D. Ga. June 23, 2017).[2]

In sum, the ALJ did not err in discounting Moore-Montgomery's statements regarding the intensity, persistence, and duration of the limitations imposed by her symptoms. *See both* SSR 96-7p *and* SSR 16-3p.

B. **Plaintiff's Obesity**

Moore-Montgomery also contends the ALJ's failure to explicitly discuss the effect of her obesity (she is morbidly obese with a body mass index of 58, at 5'4" and 348 pounds, *see* tr. 602) on her ability to work is reversible error. Doc. 10 at 10-11; *see also* SSR 02-1p (requiring

---

[2] Plaintiff devotes significant briefing space to the ALJ's discussion of the medical opinion evidence and whether the ALJ ought to have ordered a supplemental consultative psychological examination. Doc. 10 at 7-10. But she does not actually argue that the ALJ needed to further develop the record, or that such development would undermine the ALJ's finding that her substantial, unexplained gaps in treatment belied her allegation of a disabling mental impairment. *Id.*

consideration of obesity throughout the sequential evaluation because "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity."); 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'").

But plaintiff does not show how her obesity impacts the RFC assessment. Indeed, aside from concluding that the ALJ's failure to explicitly discuss it is *per se* error, she does not identify in any way how her corpulence affects her function. Doc. 10 at 10-11. The ALJ incorporated standing and walking limitations (2 hours in an 8-hour day), restricted her balancing, stooping, kneeling, and crouching, and prohibited crawling entirely. Tr. 19. What additional limitations were needed, plaintiff doesn't say. Doc. 10 at 10-11. And in the absence of any argument as to how the ALJ's RFC assessment was deficient,[3] the

---

[3]   After all, the mere diagnosis of obesity is not enough to manifest a duty to consider a claim otherwise unaddressed by either the claimant or her physicians. *See Moore*, 405 F.3d at 1213 n. 6 ("the mere existence of these impairments does not reveal the extent to which they limit [plaintiff's] ability to work"); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (*quoting McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically

8

Court will not dig through the record to discover one on its own initiative. *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at *3 n. 3 (S.D. Ga. Aug. 12, 2015) (a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed." (*citing Sanchez v. Comm'r of Soc. Sec.*, 507 F. App's 855, 856 n. 1 (11th Cir. 2013)); *see also Garcia v. Comm'r*, 498 F. App'x 710, 712 (9th Cir. 2012) (no duty to evaluate obesity at Steps 4 & 5 where plaintiff "did not provide any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis."), *cited in Williams*, 2017 WL 2981348 at * 5-6.  Plaintiff has not hinted, much less demonstrated, any error in the ALJ's incorporation of her morbid obesity into the RFC assessment.

## C.   Jobs Identified by the ALJ

Plaintiff finally argues that the ALJ erred in relying on the VE's testimony that she could perform the requirements of representative work as a bench assembler, optical inspector, and surveillance system monitor.  Doc. 10 at 11-14.  Specifically, she contends that the ALJ's

---

ascertained disability must be measured in terms of its effect upon ability to work")); *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) (hypotheticals to VEs need not include diagnoses that fail to prognosticate functional limitations). Severe health problems must not simply exist; they must preclude substantial gainful activity.  *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(iv).

typographical mistake (citing to the wrong Dictionary of Occupational Titles (DOT) title number for bench assembler) constitutes reversible error. Doc. 10 at 12-13. Of course, mere typographical error is not enough to compel remand. Such error is, after all, harmless to the disability finding. *See Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 781 n. 1 (11th Cir. 2016) (typographical errors in an ALJ's decision are not dispositive). And, given that Moore-Montgomery does not dispute that the bench assembler job exists in the significant numbers in the national economy, her further arguments that surveillance monitor jobs don't exist in significant numbers in the national economy and that the VE did not testify about her ability to perform suture polisher work (doc. 10 at 12-13) are moot. Even if both jobs are struck, there remains work she can perform as a bench assembler (DOT 739.687-066, sedentary, unskilled work with at least 85,000 jobs in the national economy[4]).

---

[4] Work exists in the national economy if it exists in significant numbers either in the region where a claimant lives *or* in several regions of the country. *See* 42 U.S.C. §§ 1382c(a)(3)(B); 423(d)(2)(A); 404.1566(a); *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005). Though plaintiff argues that there is some duty to demonstrate such work exists in the "region" (doc. 10 at 12-13), the Eleventh Circuit has held that "the appropriate focus is the national economy." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015); *see also Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987). As to what constitutes a "significant number" in this context, there is no bright-line rule:

> This Court has never held that a minimum numerical count of jobs must

Tr. 58. Any alleged error in the VE's presentation of work as a surveillance system monitor or the ALJ's reference to work as a suture polisher is harmless. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (an error is "harmless" where correcting it would not change the outcome).

## III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Given the lapse in government appropriations, this matter has been stayed by the district judge. Doc. 13. Therefore, **within 14 days of the lifting of the administrative**

---

be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Atha*, 616 F. App'x at 934 (440 jobs locally and 23,800 jobs nationally sufficient). *See also Brooks v. Barnhart*, 133 F. App'x 669, 670-71 (11th Cir. 2005) (840 jobs nationally sufficient); *Allen*, 816 F.2d at 602 (174 jobs in the area, 1,600 jobs in the state, and 80,000 jobs nationally sufficient). As explained in the Regulations, "[l]ack of work in your local area" is not dispositive for disability where it does exist "in the national economy." 20 C.F.R. §§ 404.1566(c), 416.966(c); *see also* 20 C.F.R. §§ 404.1566(a), 416.966(a); *Brooks*, 133 F. App'x at 670.

**stay** in this case, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this  15th  day of January, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA